UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE BOARDMAN and TERRI BARNETT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18 C 2728 |
| | ) | |
| SERVICE EMPLOYEES INTERNATIONAL UNION a/k/a SEIU, SERVICE EMPLOYEES INTERNATIONAL UNION NO. 73 a/k/a SEIU LOCAL 73, MARY KAY HENRY, Individually and as President of SEIU, and ELISEO MEDINA and DIAN PALMER, Individually and as Co-Trustees of SEIU LOCAL 73, | ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Christine Boardman and Terri Barnett are former elected officers of Service Employees International Union No. 73 ("Local 73"), a local labor union and one of the defendants in this action. Local 73 is affiliated with Service Employees International Union ("SEIU"), another defendant in this action. On August 3, 2016, SEIU took control of Local 73 by placing it into trusteeship. The same day, Local 73's co-trustees—Defendants Dian Palmer and Eliseo Medina—removed Boardman and Barnett from their elected positions. Boardman lost her union membership as a result. Palmer and Medina gave Barnett a staff position in Local 73 but eventually fired her, at which point she also lost her union membership. Plaintiffs assert claims relating to these events against SEIU; Mary Kay Henry, the president of SEIU; Palmer; Medina; and Local 73. Plaintiffs allege, first, that Henry and SEIU improperly placed Local 73 into trusteeship in violation of Title III of the Labor Management Reporting and Disclosure Act ("LMRDA"), which governs when and how a labor organization can impose a trusteeship on a subordinate organization. *See* 29 U.S.C. § 461 *et seq.* Plaintiffs allege, further, that by

terminating their elected positions and rescinding their membership rights, as well as through other actions, Defendants violated their free speech and due process rights under Title I, Sections 101(a)(2) and 101(a)(5) of the LMRDA.  *See* 29 U.S.C. §§ 411(a)(2), (a)(5).  Boardman also asserts a claim for retaliation.  The trusteeship was in effect when Plaintiffs filed this lawsuit, but it ended in November 2018 after Local 73 elected and installed new officers.

Before the court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim.  For the following reasons, Defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND

The court takes the following facts from Plaintiffs' Second Amended Complaint [42], except where otherwise noted.

SEIU "is a labor union representing workers in health care, public services and property related services in the United States and Canada." (Second Am. Compl. ¶ 3.)  It is headquartered in Washington, D.C. and conducts business throughout the United States, including in counties within this judicial district.  (*Id.*)  Local 73 is a local union that is affiliated with SEIU and has approximately 26,000 members.  (*Id.* ¶ 4.)  It "has jurisdiction to represent public employees and some private employees throughout Illinois and northwest Indiana," and has its main offices in Chicago, Illinois.  (*Id.*)

### A. Boardman

Christine Boardman was the elected president of Local 73 from November 2000 to August 3, 2016.  (*Id.* ¶ 11.)  During that time, she was also a member in good standing of Local 73.  (*Id.* ¶ 13.)  "On numerous occasions prior to August 2016," Boardman was a vocal opponent of Defendant Henry, the president of SEIU.  (*Id.* ¶ 20.)  Boardman "believ[ed] [that Henry] did not represent the interests of" Local 73 or the "members that had placed Boardman in office."  (*Id.*)  Boardman publicly "refus[ed] to support [Henry] for election as president of SEIU" and "dissent[ed] from [her] effort to have the union" publicly "endorse a chosen candidate" for President of the

2

United States. (*Id.*)  Boardman also engaged in "[p]ublic communications challenging the administration of SEIU and its policies and practices, including political endorsements." (*Id.* ¶ 45.)[1]

According to the Local 73 Constitution, the secretary-treasurer of Local 73 is elected and "perform[s] the duties of the [Local 73] President in his/her absence." (*See* Local 73 Const., Ex. B to Defs.' Mot. to Dismiss [47-2], at art. VI, § 1, art. X, § 4.)[2]  At some point during her presidency, Boardman learned that Local 73's secretary-treasurer, Matthew Brandon, had engaged in "malfeasance" that was "contrary to the members' economic and labor movement interests." (Second Am. Compl. ¶¶ 15-16.)[3]  Plaintiffs do not describe the "malfeasance," but allege that "Brandon's actions were intended to subvert the procedures of the local union and to take over the local union in violation of [its] democratic procedures." (*Id.* ¶ 15.)  On July 1, 2016, in accordance with procedures set forth in the SEIU and Local 73 Constitutions and Bylaws, Boardman suspended Brandon for 30 days, filed charges against him, and asked Henry to "assume original jurisdiction of the charge[s]." (*Id.* ¶¶ 15-16.)  Plaintiffs do not specify what charges Boardman filed against Brandon.

---

[1]     Plaintiffs do not specify why Boardman thought that Henry was not representing Local 73's interests.  Nor do they describe the SEIU policies and practices that Boardman opposed.  The court is also uncertain whether Boardman believed that SEIU should not endorse *any* candidate for U.S. President, or whether she opposed its endorsement of a specific candidate.

[2]     Because Plaintiffs reference the SEIU Constitution and the now-suspended Local 73 Constitution throughout the Second Amended Complaint, the court can properly consider both documents in ruling on Defendants' motion to dismiss.  *See, e.g.*, *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'" (quoting *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).  Defendants have provided both documents to the court.  The parties agree that for purposes of this motion, there is no difference between the suspended and current Local 73 Constitutions.  (*See, e.g.*, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mot.") [47], 3 & n.2; *see generally* Pls.' Opp. to Defs.' Mot. to Dismiss ("Pls.' Opp.") [52].)

[3]     Plaintiffs do not state when Brandon was elected secretary-treasurer.

The SEIU Constitution provides that "[u]pon the International President assuming original jurisdiction," she "*may* remove the proceedings from the trial body of the Local Union and . . . hold a hearing on the charges *either* personally *or* before a hearing officer or officers designated by the International President." (*Id.* ¶ 19 (quoting SEIU Const., Ex. A to Defs.' Mot. to Dismiss [47-1], art. XVII, § 2(f) (emphasis added)).) Henry allegedly did assume original jurisdiction over the charges but "failed to appoint a hearing officer." (*Id.* ¶ 17.) On July 22, 2016, Boardman "filed amended charges against Brandon to resolve ongoing issues raised by his conduct that posed an obstacle to the best interests of" Local 73 and its members. (*Id.* ¶ 18.) Plaintiffs do not state what the "ongoing issues" were. Henry "fail[ed] . . . to appoint a hearing officer" for the amended charges. (*Id.* ¶ 19.)

The SEIU Constitution permits SEIU to place a local union into trusteeship in certain circumstances. It provides:

> Whenever the International President has reason to believe that, in order to protect the interests of the membership, it is necessary to appoint a Trustee for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of this International Union, he or she may appoint such Trustee to take charge and control of the affairs of a Local Union or of an affiliated body and such appointment shall have the effect of removing the officers of the Local Union or affiliated body.

(SEIU Const., art. VIII, § 7(a).)

On August 3, 2016, SEIU, "by and through" Henry, placed Local 73 into trusteeship. (Second Am. Compl. ¶ 21.) Henry appointed Defendants Medina and Palmer to act as Local 73's co-trustees. (*Id.* ¶ 5.) Defendants informed Boardman and Local 73 "that the basis of the trusteeship was to restore order." (*Id.* ¶ 26.) Plaintiffs imply, but do not expressly allege, that any loss of order was a function of Brandon's misconduct, including his attempt to subvert Local 73's democratic procedures. (*See, e.g.*, *id.* ¶ 23 (alleging that because Boardman had filed "charges" against Brandon "to address any alleged disorder in the local," Defendants' claim that Local 73 "had lost order was pretextual and a gross overstatement of issues facing the local union").) Later,

Defendants stated that SEIU placed Local 73 into trusteeship for two additional purposes:  to "restor[e] [Local 73's] financial stability"  and help members negotiate "open contracts." (*Id.* ¶ 27.)[4]  Plaintiffs allege that Defendants' stated reasons for imposing the trusteeship were "unsupported" and "pretextual."  (*Id.* ¶¶ 23, 28; *see also, e.g.*, *id.* ¶¶ 54, 69, 92.)  As discussed herein, Plaintiffs allege that Defendants' actual purpose for imposing the trusteeship was to retaliate against them for their speech, including their opposition to Henry and SEIU.  (*See id.* ¶¶ 45, 83.)

SEIU never filed charges of wrongdoing against Boardman.  (*Id.* ¶ 31.)  Nonetheless, on the same day the trusteeship began, Medina and Palmer informed Boardman "that she was terminated as President of" Local 73.  (*Id.* ¶ 24.)[5]  They also told her that she "could no longer enter the premises" or "have any contact with members."  (*Id.*)  It is undisputed that the SEIU Constitution states that placing a local union into trusteeship "shall have the effect of removing the officers of the Local Union or affiliated body."  (SEIU Const., art. VIII, § 7(a).)  Plaintiffs allege, however, that "[t]he termination of officers during trusteeship [is] not required and is not the ordinary and usual practice of [Henry] and SEIU."  (Second Am. Compl. ¶ 24.)

When Defendants removed Boardman from her position as Local 73 president, they also terminated her membership in Local 73.  (*See id.* ¶ 33.)  Specifically, "[i]n or about August 2016," Medina, Palmer, and Local 73 "rejected Boardman's tender of dues as a member."  (*Id.*)  Boardman responded by "submitt[ing] [her] dues in cash at the [Local 73] retirees' meeting," which

---

[4]  In their briefing, the parties do not discuss Defendants' alleged statement that they imposed the trusteeship to help Local 73's members with contract negotiation.  Accordingly, the court does not address this purported justification for the trusteeship in ruling on Defendants' motion to dismiss.

[5]  Plaintiffs allege that Boardman simultaneously lost her elected position on and membership in the SEIU International Executive Board.  (*Id.* ¶¶ 14, 41.)  But Plaintiffs do not assert independent LMRDA claims based on these alleged injuries, and in the briefing on Defendants' motion to dismiss, the parties barely mention them.  The court, therefore, treats these injuries as part and parcel of Boardman's loss of her Local 73 elected office and union membership.

occurred on an unspecified date. (*Id.* ¶ 34.) At the meeting, she also "announced her plan to attend" Local 73's "regular member meeting," which "[Local 73] retirees were allowed to attend." (*Id.*) Boardman alleges that "she is and remains eligible for retirement status as a past president of" Local 73, and that she "receives a retirement pension and retirement benefits from" Local 73 and SEIU. (*Id.* ¶¶ 95-96.)

The day after the retirees' meeting, Palmer "personally contacted Boardman" and asked her not to "attend the September 23, 2017 [sic] regular member meeting," stating that Boardman's "presence would be disruptive." (*Id.* ¶ 35 (internal quotation marks omitted).)[6] The next day, "Boardman received an overnight mail returning the dues she had paid and a letter on [Local 73] letterhead stating it did not consider [her] a member." (*Id.* ¶ 36.)[7] Later, Palmer allegedly informed Local 73 retirees "that Boardman was not considered a true retiree as she had been terminated for cause." (*Id.* ¶ 37.) Boardman "attempted to attend" the Local 73 members' meeting on September 23, 2016, but she "was physically blocked from entering . . . and was met by threats to call the police on the alleged basis [that she] was not a member." (*Id.* ¶ 38.)

On September 24, 2016, "[p]ursuant to the provisions of the SEIU Constitution," SEIU held a hearing concerning the trusteeship.. (*Id.* ¶¶ 29, 70; *see* Defs.' Mot. 3 (stating that SEIU held a hearing on that date to "ratify" the trusteeship).)[8] The trusteeship ended on November 8, 2018, after Local 73 held an election and installed the newly-elected officers. (*See* Defs.' Mot. 3; Pls.'

---

[6]  The court assumes that Plaintiffs are referencing a 2016 meeting, not a 2017 meeting. (*See, e.g.*, Second Am. Compl. ¶ 13 (alleging that Defendants "unilaterally refused to recognize [Boardman's] union membership" in "September 2016").)

[7]  Plaintiffs do not state who signed the letter.

[8]  Neither side specifies the outcome of the September 24, 2016 meeting. But because the trusteeship remained in effect until November 2018, the court assumes the SEIU determined that the trusteeship could or should continue.

Opp. 2.)[9]  Boardman alleges that after the trusteeship ended, Defendants prevented her from attending a Local 73 members' meeting on February 23, 2019.  (Second Am. Compl. ¶¶ 93-101.) According to Boardman, before the meeting began, she stood in a public space and distributed leaflets that "called on members to challenge [Local 73's] new elected leadership" on "changes in . . . governing policies."  (*Id.* ¶ 100.)  Boardman alleges that Local 73's chief of staff excluded her from the meeting and "directed the Chicago Police to forcibly arrest" her for trespassing. (*Id.* ¶ 101.)

## B.  Barnett

Before August 2015, Barnett was "employed in one of the bargaining units represented by" Local 73.  (*Id.* ¶ 56.)  Barnett became the elected vice president of Local 73 in August 2015 and "worked closely with Boardman."  (*Id.* ¶¶ 56-57.)  On August 3, 2016, when SEIU placed Local 73 into trusteeship, Medina and Palmer "summarily removed Barnett as . . . vice president." (*Id.* ¶ 59.)  Defendants allowed Barnett to work instead as a Local 73 staff employee (*id.*), but Plaintiffs allege that Medina conditioned the employment offer on Barnett's agreement to withdraw from a defamation lawsuit that she and other individuals had filed against Local 73 in February 2016 in the Circuit Court of Cook County, Illinois.  (*See id.* ¶¶ 79-80.)  Barnett alleges that she "felt intimidated" and, "as a result of the threatened consequences," she did withdraw from the lawsuit.  (*Id.* ¶ 81.)

Thereafter, Plaintiffs allege, Medina, Palmer, and others gave Barnett "repeated affirmation of . . . her [job] performance"—yet they "increasingly diminished" her "authority to do her job."  (*Id.* ¶¶ 59-60.)  Medina and Palmer also "interrogated [Barnett] on one or more occasions" about "Boardman's actions and whether [Boardman] had [been having] contact with union members."  (*Id.* ¶ 82.)  Barnett alleges that Medina and Palmer interrogated her because

---

[9]  Defendants have informed the court that "the election is expected to be re-run under Department of Labor supervision" due to a challenge to its validity (*see* Defs.' Mot. 3 n.3), but neither side argues that this fact is relevant for this ruling.

of her "known association with Boardman's role as a vocal critic of [Henry] and SEIU." (*Id.*) She also alleges that she refused to provide the information they sought. (*See id.* ¶ 83.) "Barnett was a member in good standing" of Local 73 "until July 26, 2017." (*Id.* ¶ 61.) On that date, Defendants "refused to recognize her union membership, returned . . . member dues she had previously submitted," and "terminated her employment." (*Id.*)

Plaintiffs allege, and Defendants do not dispute, that each has exhausted her internal remedies with Local 73 and SEIU. (*See id.* ¶¶ 40, 76.)

## PROCEDURAL HISTORY

SEIU's decision to place Local 73 into trusteeship resulted in a spate of litigation, including a related case filed in this district on February 7, 2018 and assigned to this court. *See Hunter v. Serv. Emps. Int'l Union*, No. 18 C 986, 2019 WL 1294697, at *4 & n.9 (N.D. Ill. Mar. 21, 2019). The plaintiffs in *Hunter* were also members of Local 73 and asserted claims under Titles I and III of the LMRDA. *See id.* at *4-5. Title I provides union members with certain rights that are enforceable in federal court, such as the right to be free from "unreasonable restrictions on speech and assembly." *Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehouseman & Packers v. Crowley*, 467 U.S. 526, 536-37 (1984). Title III imposes restrictions on when and how a labor organization can place a subordinate organization into trusteeship. *See* 29 U.S.C. § 461 *et seq.* On March 21, 2019, the court granted the defendants' motion to dismiss all claims for lack of subject matter jurisdiction. *See Hunter*, 2019 WL 1294697, at *1. The court noted, first, that the plaintiffs sought only injunctive relief for their Title III claims—effectively, "an order to end the trusteeship via new elections." *Id.* at *7. The court held that because elections had (by the time the court ruled) been held for Local 73, the newly elected officers had been installed, and the trusteeship had ended, the plaintiffs' Title III claims were moot. *See id.* at *8. Next, the court determined that every form of relief the plaintiffs sought for their Title I claims would have required invalidating the results of the election and/or ordering the defendants to conduct a new election. *See id.* at *9-10. Under Title IV of the LMRDA, a "complaint to and an

action brought by the Secretary of Labor" is "the exclusive means of challenging an election already conducted." *Id.* at *9 (quoting *Driscoll v. Int'l Union of Operating Eng'rs, Local 139*, 484 F.2d 683, 686 (7th Cir. 1973)). Accordingly, the court dismissed the plaintiffs' Title I claims as preempted by Title IV. *Hunter*, 2019 WL 1294697, at *11.[10]

Boardman filed this lawsuit on April 16, 2018. (*See* Compl. [1].) It was originally assigned to Judge St. Eve (then of this court) but on motion of the *Hunter* defendants was reassigned to this court as a related case within the meaning of Local Rule 40.4. *See Hunter*, 2019 WL 1294697, at *4 n.9. Boardman initially asserted claims for violations of LMRDA Title I, Sections 101(a)(2) and 101(a)(5)—the free speech and due process provisions, respectively—and LMRDA Title III. (*See generally* Compl.) She filed an amended complaint in July 2018 after Defendants moved to dismiss. (*See* First Am. Compl. [29].) At that time, Barnett joined as an additional Plaintiff and asserted the same claims on her own behalf. (*See generally id.*) Defendants again moved to dismiss. Their motion was fully briefed before the trusteeship ended and before the court issued its ruling in *Hunter*. After issuing that ruling, the court determined that additional briefing was appropriate for this case due to the "substantial overlap between the issues addressed in [the *Hunter*] ruling and the matters at issue" here. (*See* Mar. 21, 2019 Order [37] (striking Defendants' motion to dismiss without prejudice to renewal).) Subsequently, Plaintiffs

---

[10]     Still other members of Local 73 have filed at least two other lawsuits in this district concerning the trusteeship. In December 2017, thirteen members of Local 73 sought to enjoin the continuation of the trusteeship. *See Greenidge v. Serv. Emps. Int'l Union*, Case No. 17 C 8986 (Alonso, J.). Following a two-day evidentiary hearing, Judge Alonso denied the plaintiffs' motion for a preliminary injunction, reasoning that the plaintiffs had "not made the required threshold showing either as to irreparable harm or as to the issue of reasonable likelihood of success on the merits. (Dec. 22, 2017 Hrg. Tr., Case No. 17 C 8986 [32], 114:25-115:3; Dec. 22, 2017 Minute Entry, Case No. 17 C 8986 [20]. The parties later stipulated to the dismissal of the case with prejudice. (*See* Jan. 11, 2018 Stip., Case No. 17 C 8986 [28].) In August 2018, seven members of Local 73 filed a lawsuit claiming, among other things, that their Local 73 elected and staff positions were terminated in violation of Title I. *See English v. Serv. Emps. Int'l Union*, No. 18 C 5272, 2019 WL 4735400, at *1, *2 (N.D. Ill. Sept. 27, 2019). The court in *English* granted the defendants' motion to dismiss those claims under Federal Rule of Civil Procedure 12(b)(6). *See English*, 2019 WL 4735400 at *3-4.

filed the Second Amended Complaint, to which Boardman added a claim under Title I's free speech provision (Section 101(a)(2)) based on her exclusion from the February 23, 2019 membership meeting, as well as a claim for retaliation. (*See* Second Am. Compl., Counts Seven and Eight.) Defendants moved to dismiss the Second Amended Complaint, and that motion is now before the court.

## **DISCUSSION**

Defendants have moved to dismiss under Federal Rules 12(b)(1) and 12(b)(6). The Rule 12(b)(1) challenge is to the court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized by federal statute." *Evers v. Astrue*, 536 F.3d 651, 657 (7th Cir. 2008) (internal quotation marks omitted). The party invoking federal jurisdiction bears the burden of establishing that jurisdiction is proper. *See, e.g.*, *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See id.* at 588; *Evers*, 536 F.3d at 656. "Mootness strips a federal court of subject-matter jurisdiction." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 815 (7th Cir. 2018). "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be an opinion advising what the law would be upon a hypothetical state of facts." *H.P. ex rel. W.P. v. Naperville Cmty. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018) (internal quotation marks omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See, e.g.*, *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views them in the light most favorable to the plaintiff. *See United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (*Id.*)

A.      **Plaintiffs' LMRDA Title III Claims**

In Counts Three and Six of the Second Amended Complaint, Plaintiffs assert claims under Title III of the LMRDA against Defendants SEIU and Henry, alleging that they improperly placed Local 73 into trusteeship.

Congress enacted the LMRDA out of "concern with widespread abuses of power by union leadership." *Vought v. Wis. Teamsters Joint Council No. 39*, 558 F.3d 617, 621 (7th Cir. 2009) (quoting *Finnegan v. Leu*, 456 U.S. 431, 435 (1982)). Above all, the LMRDA seeks to "ensur[e] that unions [are] democratically governed and responsive to the will of their memberships." *Finnegan*, 456 U.S. at 436. As the court noted in *Hunter*, Congress intended for Title III of the LMRDA "to address problems related to imposition of trusteeships over local unions." *Hunter*, 2019 WL 1294697, at *6 (quoting *Morris v. Hoffa*, 361 F.3d 177, 186 (3d Cir. 2004)). Title III, therefore, limits a labor organization's ability to place a "subordinate body" into trusteeship, specifically identifying the permissible purposes for doing so. 29 U.S.C. § 462. Plaintiffs argue that although Defendants purported to impose the trusteeship for statutorily permissible purposes, their actual (and only) purpose was to retaliate against Plaintiffs for their speech—specifically, their criticism of Henry and SEIU.

1.      **Subject matter jurisdiction**

Defendants contend that Plaintiffs' Title III claims are moot because the trusteeship has ended and Plaintiffs seek only declaratory and injunctive relief challenging the trusteeship. (*See* Defs.' Mot. 7; *see also Hunter*, 2019 WL 1294697, at *7 (where trusteeship had ended and plaintiffs sought only "an order to end the trusteeship via new elections," the plaintiffs' Title III

claims challenging the propriety of the trusteeship were moot (citing, inter alia, *Air Line Stewards & Stewardesses Ass'n, Local 550 v. Transp. Workers Union of Am.*, 334 F.2d 805, 807-08 (7th Cir. 1964)))).) Plaintiffs concede that their Title III claims are moot to the extent they seek an order "terminat[ing] . . . the trusteeship," "overturn[ing] an election," or "seek[ing] to alter the running of an ongoing election." (Pls.' Opp. 9, 10.) The court interprets this concession as a forfeiture of Plaintiffs' requests to be reinstated as the president and vice president of Local 73, because those requests effectively seek to overturn an election.

Plaintiffs have not forfeited their request for declaratory relief under Title III, however. (*See* Second Am. Compl, Counts Three and Six, Prayers for Relief (requesting a "declaratory order finding the imposition of the trusteeship improper").) Plaintiffs argue that this request is directly relevant to their Title I claims, and that the court therefore has subject matter jurisdiction over both their Title I and Title III claims. (*See* Pls.' Opp. 10.) In support of this argument, Plaintiffs cite this court's observation in *Hunter* that in the Sixth Circuit, courts have held that "[t]he question of the propriety of [a] trusteeship is not moot" when "it has direct bearing on whether [a plaintiff's] Title I rights were violated." *Hunter*, 2019 WL 1294697, at *8 (quoting *Thompson v. Office of Prof'l Emps. Int'l Union, AFL-CIO*, 74 F.3d 1492, 1504 (6th Cir. 1996)); *see also In re Estate of Bernard v. Int'l Bhd. of Teamsters*, No. 15-11107, 2015 WL 5611551, at *4-5 (E.D. Mich. Sept. 23, 2015) ("Plaintiffs' Title III claim . . . survives because Plaintiffs' challenge to the trusteeship bears upon the alleged violation of . . . Title I rights"). Defendants, for their part, concede that if Plaintiffs have "adequately plead[ed] that the trusteeship was imposed solely as a pretext to retaliate against Boardman for exercising her free speech right, Boardman's separate free speech claims under Section 101(a)(2) can survive" the motion to dismiss. (Defs.' Reply [56], 7.) The parties therefore agree that one way or another, the court must decide whether Defendants imposed the trusteeship solely for an improper purpose.

Unlike the Sixth Circuit, the Seventh Circuit does not appear to have addressed whether a court retains subject matter jurisdiction over Title III claims in this circumstance. In *Air Line*

*Stewards*, the Seventh Circuit held that a challenge to the propriety of a trusteeship became moot when the trusteeship ended. *See* 334 F.2d at 807-08. But the plaintiffs in that case did not assert Title I claims that turned on the propriety of the trusteeship. *See generally id.* The same is true of *Stevens v. Northwest Indiana District Council, United Brotherhood of Carpenters*, 20 F.3d 720, 724-26 (7th Cir. 1994), where the court determined that claims challenging a trusteeship "should have been dismissed for want of standing" because the trusteeship had ended before the lawsuit was filed and "there [was] insufficient support for the existence of any continuing harm resultant from the alleged trusteeship." 20 F.3d 720, 726 (7th Cir. 1994). *Stevens* nonetheless colors the mootness analysis in this case. Specifically, the court in *Stevens* stated that "[t]o discern whether [a] trusteeship claim under" Title III "has enduring legal relevance" after the trusteeship has "ceased to exist," a court "must identify the injury for which relief is sought in the part of the complaint devoted to this particular alleged violation." *Id.* at 724. This focus--on the question of whether the trusteeship caused an injury that a court can still redress--is consistent with the Sixth Circuit's discussion of mootness in *Thompson*, which likewise focused on whether there was "any relief to be had" for an allegedly unlawful (but already terminated) trusteeship. *Thompson*, 74 F.3d at 1495, 1504. In *Thompson*, there was indeed "relief to be had" because the plaintiff alleged that the imposition of the trusteeship caused violations of his Title I rights, violations for which he sought money damages. *Id.* at 1504-05. Here, Plaintiffs' Title III claims *and* their Title I claims are "devoted to" the allegation that Defendants imposed the trusteeship for an improper purpose. *Stevens*, 20 F.3d at 724; *see, e.g.*, Second Am. Compl. ¶¶ 23, 45, 54, 64, 83, 92. And Plaintiffs are "not simply seeking to lift a trusteeship or declare a trusteeship invalid after it has been lifted." *Thompson*, 74 F.3d at 1504. Rather, in addition to requesting declaratory relief, they are seeking monetary damages for "for the suppression of Title I rights as a result of the imposition of a trusteeship." *Id.*; *see, e.g.*, Second Am. Compl., Prayers for Relief (Counts I, II, IV, V, VII). Accordingly, Plaintiffs' Title III challenge to the trusteeship "has enduring legal relevance" even though the trusteeship has ended. *Stevens*, 20 F.3d at 724.

The *Thompson* court persuasively explained why this conclusion makes sense: "If evidence regarding the imposition or maintenance of a trusteeship after it has been lifted were inadmissible," the court stated, national and international unions could place subordinate organizations into trusteeship "with impunity, including as a means to suppress Title I rights, and remain immune from legal scrutiny as long as they lifted the trusteeship before the plaintiff has his day in court." *Thompson*, 74 F.3d at 1504. The Supreme Court has observed that the LMRDA does not authorize such an abuse of power. *See Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 356 (1989) ("[N]othing in the language of the LMRDA or its legislative history . . . suggest[s] that Congress intended Title I rights to fall by the wayside whenever a trusteeship is imposed."); *see also id.* at 357 ("[A] trustee's authority under Title III ordinarily should be construed in a manner consistent with the protections provided in Title I."). The evidence in this case ultimately could show that Defendants properly placed Local 73 into trusteeship and did not violate Plaintiffs' Title I rights. But because Plaintiffs allege that Defendants imposed the trusteeship "as a means to suppress [their] Title I rights," Defendants are not "immune from legal scrutiny" simply because the trusteeship has ended. *Thompson*, 74 F.3d at 1504.

Whether the court has jurisdiction to issue "a declaratory order finding the imposition of the trusteeship improper," as Plaintiffs request, is a slightly different question. (Second Am. Compl., Prayers for Relief (Counts III, VI).) *Thompson* appears to answer this question in the negative; the court in that case suggested that there is a distinction between issuing a declaratory judgment concerning a trusteeship's validity and determining for purposes of Title I claims whether a trusteeship was imposed for improper purposes. *See Thompson*, 74 F.3d at 1504 (stating that "[w]hen a plaintiff sues for injunctive and/or declaratory relief once a trusteeship has been lifted, obviously there is no longer any relief to be had"). The court is "not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Plaintiffs here appear to contend that the now-terminated

trusteeship has a continuing effect because Plaintiffs are still suffering the consequences of the alleged Title I violations—including the loss of their elected positions and membership in Local 73. (*See* Pls.' Opp. 10-11 (arguing that the requested declaratory order "may" restore their eligibility for membership in Local 73 and to run for office in future Local 73 elections).) Even assuming that these arguments establish that the trusteeship has continuing effects, the declaratory order that Plaintiffs request is phrased very generally; it is not unique to Plaintiffs or to the Title I violations they allegedly suffered. Plaintiffs do not explain how the requested order would require Defendants to remedy the harms Plaintiffs allege they suffered, and the court is not persuaded that the order could do so. The court, therefore, concludes that the termination of the trusteeship rendered moot Plaintiffs' request for declaratory relief.

That said, for the reasons already discussed, the "question of the propriety of the trusteeship is not moot." *Thompson*, 74 F.3d at 1504. The court will adjudicate that question for the limited purpose of determining whether Plaintiffs should "recover damages for the [alleged] suppression of Title I rights as a result of the imposition of [the] trusteeship." *Id.* at 1504-05; *see also, e.g.*, *Bastani v. Am. Fed'n of Gov't Emps., AFL-CIO*, No. 1:18-cv-00063 (TNM), 2019 WL 5727961 (D.D.C. Nov. 5, 2019), at *4, *8 (denying defendant's motion for summary judgment on a plaintiff's Title I claim because a reasonable jury could determine based on the evidence that defendants may have imposed the trusteeship "for retaliatory reasons," but determining that the plaintiffs' request for a declaratory judgment that the international union imposed the trusteeship in violation of its constitution was moot because (1) the trusteeship had ended and (2) there was no "continuing effect" on the plaintiffs that the court could remedy through a declaratory judgment (quoting *Spencer*, 523 U.S. at 18).)[11] Because a plaintiff cannot challenge a trusteeship under Title I, the court addresses the question of the propriety of the trusteeship under Title III. *See,*

---

[11]    *Bastani* was issued after the parties had fully briefed Defendants' motion to dismiss.

*e.g.*, *Farrell v. Int'l Bhd of Teamsters, Chauffers, Warehouseman & Helpers of Am. (Airline Div.)*, 888 F.2d 459, 461 (6th Cir. 1989) (allowing an independent Title I challenge to a trusteeship's validity would "reduce to surplusage those positions of Title III which provide a specific remedy for improper establishment of trusteeships"); *Morris v. Hoffa*, No. Civ. A. 99-5749, 2001 WL 1231741, at *10 (E.D. Pa. Oct. 12, 2001) ("Plaintiffs' argument that the imposition of the trusteeship violated their rights of free speech under the LMRDA . . . is really just another way of saying that the trusteeship was invalid because it was imposed for an improper motive . . . . Such challenges to the validity of a trusteeship may only be brought under Title III."). Accordingly, Defendants' motion to dismiss Plaintiffs' Title III claims as moot is denied. The court, moreover, must determine whether Plaintiffs have sufficiently pleaded that the trusteeship was imposed for an improper purpose in order to determine whether Plaintiffs have stated a claim for Title I violations. The court turns to that question now.

### 2.    Propriety of the trusteeship

Title III provides that a trusteeship is "presumed valid for a period of eighteen months from the date of its establishment." 29 U.S.C. § 464(c). After that period has expired, "the trusteeship shall be presumed invalid [in a proceeding brought under this section,] and its discontinuance shall be decreed unless the labor organization" shows "by clear and convincing proof that the continuation of the trusteeship is necessary for a purpose allowable under section 462." *Id.* Although the trusteeship has ended, Defendants argue that the presumption of validity applies because Plaintiffs challenge the establishment of the trusteeship, not its continuation. (*See* Defs.' Mot. 8 n.6.) Defendants cite no authority for this proposition, however. Plaintiffs, for their part, have not commented on the question of whether a presumption of validity or invalidity applies. The court concludes that the statute, by its plain language, establishes presumptions that concern active trusteeships. Because the parties' dispute concerns a terminated trusteeship, the court declines to apply either presumption. It therefore addresses only whether Plaintiffs have sufficiently pleaded that Defendants lacked a proper purpose for imposing the trusteeship, and

instead did so in retaliation for Plaintiffs' speech.  For the reasons discussed below, the court concludes that Plaintiffs have met this burden.

Title III permits a labor organization to place a subordinate organization into trusteeship for certain purposes, including to "correct[] corruption or financial malpractice" and "restor[e] democratic procedures."  29 U.S.C. § 462.  The statute allows for imposition of a trusteeship, however, "only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body."  *Id.*[12]  According to Defendants, it is well-settled that "if there is even a single permissible ground for placing the local into trusteeship, the trusteeship is valid."  (Defs.' Mot. 9 (citing *Morris*, 361 F.3d at 188-89 (appellants did not challenge district court's conclusion as a matter of law that "a trusteeship is permissible if supported by a single proper purpose even if an improper purpose is also alleged"); *Nat'l Ass'n of Letter Carriers, AFL-CIO v. Sombrotto*, 449 F.2d 915, 923 (2d Cir. 1971) ("[O]ne proper purpose for imposing a trusteeship would suffice . . . .")));  *cf. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, & Helpers, AFL-CIO v. Local Lodge 714*, 845 F.2d 687, 693 (7th Cir. 1988) ("We conclude that the trusteeship was a proper method for curing Local Lodge 714's financial malpractice even if less drastic methods would have sufficed," provided that "financial malpractice was the (*or a*) bona fide purpose of the trusteeship . . . ." (emphasis added)).  Plaintiffs agree that Defendants "only need one proper basis for imposition of a trusteeship," (Pls.' Opp. 12), so the court will apply this rule.

Defendants argue that Plaintiffs "affirmatively plead[] facts" that "establish[] at least one permissible ground for establishing the trusteeship":  preventing "the undemocratic takeover and the subversion of local union procedures by a rogue officer," *i.e.*, Local 73's secretary-treasurer, Brandon.  (Defs.' Mot. 9, 10; *see* 29 U.S.C. § 462 ("restoring democratic procedures" is a

---

[12]     Plaintiffs do not allege for purposes of Title III that Defendants' imposition of the trusteeship was procedurally improper (*see generally* Second Am. Compl., Counts Three and Six), so the court does not address that issue.

permissible purpose for imposing a trusteeship).) As Defendants emphasize, Plaintiffs have alleged that Boardman filed unspecified "charges" against Brandon in July 2016 because he was (1) taking actions "that were contrary to [Local 73's] economic and labor movement interests" and (2) trying to "take over the local union in violation of democratic procedures." (Second Am. Compl. ¶¶ 15-16; *see* Defs.' Mot. 9.) Plaintiffs have alleged, further, that SEIU took Local 73 into trusteeship in August 2016—just a month after Boardman filed the original charges against Brandon, and just weeks after Boardman filed "amended charges" against Brandon on July 22. (*See* Second Am. Compl. ¶¶ 15-20; *see* Defs.' Mot. 9.) And Plaintiffs allege that Defendants initially "instructed Boardman and [Local 73] that the basis of the trusteeship was to restore order." (*See* Second Am. Compl. ¶ 26.) Defendants argue that "preventing the undemocratic takeover and subversion of local union procedures . . . unquestionably falls within the scope of the permissible purpose of 'restoring democratic procedures'" in Title III. (Defs.' Mot. 10 (quoting 29 U.S.C. § 462).)

Plaintiffs acknowledge that under Title III, restoring a local union's democratic procedures is a permissible purpose for placing it into trusteeship. (*See* Pls.' Opp. 11.) Plaintiffs allege, however, that Defendants' stated purpose of restoring order was "pretextual." (Second Am. Compl. ¶ 23; *see* Pls.' Opp. 11.) By Plaintiffs' account, Defendants' actual—and only—purpose for imposing the trusteeship was to retaliate against Plaintiffs for their speech. (*See, e.g.*, Second Am. Compl. ¶¶ 45, 83 (alleging that Defendants placed Local 73 into trusteeship and removed Plaintiffs from their elected positions because Plaintiffs had, among other things, publicly criticized Henry and SEIU); *see also* Pls.' Opp. 11 (recounting allegations that Boardman had "a long and adversarial relationship with" Henry and arguing that "[t]he trusteeship offered Ms. Henry a simple solution to the proverbial thorn in her side").)

Plaintiffs have pleaded sufficient factual content to support this inference. First, Plaintiffs allege facts that, if true, plausibly suggest that Local 73 had not "lost order." (Second Am. Compl. ¶ 23.) For example, according to Plaintiffs, Boardman followed procedures set forth in the SEIU

and Local 73 Constitutions to address Brandon's misconduct. (*See id.* ¶¶ 15-16.) Plaintiffs also allege that as elected officers of Local 73, they were "maintain[ing] order" by, among other things, holding membership meetings regularly; operating an executive board composed of members "in a democratic manner"; and working to reduce a financial deficit that preexisted Plaintiffs' time as elected officers. (*Id.* ¶¶ 28, 54.) Urging the court to conclude, instead, that Local 73 was "in a crisis," Defendants emphasize that Brandon was Boardman's "second-in-command" and was "responsible for the union's finances." (Defs.' Mot. 9-10.) But Plaintiffs allege that Boardman suspended Brandon in July 2016 and, further, that Boardman and Barnett shared responsibility with Brandon for managing Local 73's finances. (*See* Second Am. Compl. ¶ 15; *id.* ¶¶ 28, 54 (alleging that Boardman and Barnett helped "move[] [Local 73] toward greater financial stability").) Based on these allegations, it is reasonable to infer that Plaintiffs were in control of Local 73's democratic procedures and finances despite Brandon's misconduct. It follows that, contrary to Defendants' arguments, Plaintiffs have not affirmatively pleaded that Defendants had at least one proper purpose for imposing the trusteeship. Rather, the allegations plausibly suggest that "[n]o grounds existed, as defined by the LMRDA, for the imposition of the emergency trusteeship." (*Id.* ¶ 28; *see* Pls.' Opp. 11 (arguing same).)

Furthermore, Plaintiffs' pleadings permit an inference that Defendants placed Local 73 into trusteeship for an improper purpose: to retaliate against Plaintiffs for being vocal critics of Henry and SEIU. (*See* Second Am. Compl. ¶¶ 20, 45, 83.) Plaintiffs identify specific ways in which they opposed Henry and SEIU: namely, refusing to support Henry's run for SEIU president and criticizing Henry's "effort to have the union publically [sic] endorse a chosen candidate for . . . president of the United States." (*Id.* ¶ 20.) It is not unreasonable to assume that Plaintiffs' vocal criticism upset Henry and SEIU and threatened the power that those Defendants wielded over Local 73. The inference that Defendants wanted to oust Plaintiffs from their elected positions is rational because the effect would be to eliminate the speech that Defendants deemed problematic—or at least to reduce Plaintiffs' influence over Local 73's members. And the parties

agree that by placing Local 73 into trusteeship, Defendants were authorized to—and in fact did—remove Plaintiffs from their elected positions. (*See* Second Am. Compl. ¶¶ 24. 59; Defs.' Mot. 3.) Taken together, these allegations plausibly suggest that Defendants imposed the trusteeship so that they could remove Plaintiffs from elected office and thereby stifle their criticism.

Arguing otherwise, Defendants emphasize that Boardman was Local 73's president for many years. (*See* Defs.' Reply 11.) According to Defendants, if SEIU "truly were bent on retaliating against Boardman for reasons unrelated to any bona fide concern over [Brandon's] misconduct," it makes no sense that they waited until August 2016 to bring down the sword. (*Id.*) This argument disregards, among other things, the allegations that Barnett became the vice president of Local 73 in August 2015, "worked closely with Boardman," and was "associat[ed] with Boardman's role as a vocal critic of [Henry] and SEIU." (Second Am. Compl. ¶¶ 56-57, 82.) It is plausible that the Boardman-Barnett team irked Defendants more than Boardman alone. Defendants' argument also ignores that 2016 was a U.S. presidential election year. As noted, Plaintiffs allege that they opposed Henry's efforts to have SEIU endorse a specific candidate. Seen in this light, the timing of the trusteeship (approximately one year after Barnett took office, and just months before the U.S. presidential election) is consistent with Plaintiffs' version of the events.

Other allegations likewise support an inference that Defendants acted with retaliatory intent. Plaintiffs, for example, allege that Defendants never filed charges of wrongdoing against them. (*See* Second Am. Compl. ¶¶ 31, 72.) Viewed in the light most favorable to Plaintiffs, this allegation suggests that Plaintiffs were adequately performing their duties as elected officers, and thus undermines an alternative explanation for Defendants' decision to remove them from office: poor job performance. In addition, Plaintiffs allege that Defendants imposed the trusteeship without giving them notice and did not allow them to participate in the September 2016 trusteeship ratification hearing. (*See, e.g.*, *id.* ¶¶ 21, 30, 71.) Although Defendants may not have been required to include Plaintiffs in the trusteeship-implementation process (*see* Defs.' Reply 13-14),

the fact that they did not extend this courtesy to allegedly well-performing, elected leaders can reasonably be viewed as evidence of retaliatory intent.  In a similar vein, Plaintiffs allege that Henry could have "obviated the imposition of a trusteeship" by appointing a hearing officer to adjudicate the charges against Brandon, but instead chose the harsher measure of placing Local 73 into trusteeship.  (Second Am. Compl. ¶ 23.)  Defendants argue that Henry's choice does not reflect retaliatory intent because "nothing in the LMRDA or the SEIU Constitution required" Henry to take Plaintiffs' preferred action.  (Defs.' Mot. 10; *see also* Defs.' Reply 12.)  But the fact that Henry had options does not foreclose the possibility that the choice she made was retaliatory. *See, e.g.*, *Int'l Bhd. of Boilermakers*, 845 F.2d at 693 (concluding "that the trusteeship was a proper method for curing [local union's] financial malpractice even if less drastic methods would have sufficed—*provided, however* . . . that financial malpractice was the (or a) *bona fide* purpose of the trusteeship" (emphasis added)); *see* Defs.' Mot. 10 (citing same).  And because, for reasons already discussed, Plaintiffs have adequately pleaded that Local 73 had not "lost order," the inference that retaliatory purposes motivated Henry's decision to take the harsher course is reasonable.

Plaintiffs also allege that "[t]he termination of officers during trusteeship [is] not required and is not the ordinary and usual practice of [Henry] and SEIU."  (Second Am. Compl. ¶ 24.)  Defendants argue that Plaintiffs' allegation cannot be true because under the SEIU Constitution, placing a local union into trusteeship requires the automatic removal of its elected officers.  (*See* Defs.' Reply 3 (citing SEIU Const., art. VIII, § 7(a) (providing that a trusteeship "shall have the effect of removing" the local union's elected officers).)  Defendants, however, have not pointed to any provision in the SEIU Constitution that restricts trustees' authority to retain the local's elected officers if they so choose.  Plaintiffs, for their part, argue that they can "introduce multiple occasions where the International union has imposed a trusteeship and not removed one or more officers."  (Pls.' Opp. 5 n.1.)  At this stage of the litigation, the court credits Plaintiffs' allegation that Defendants retained elected officers during other trusteeships.  Taken as true, the allegation

lends further support to the inference that Defendants imposed the trusteeship to retaliate against Plaintiffs for criticizing Henry and SEIU.

Finally, Plaintiffs argue that Defendants' decision not to give Boardman a staff position after they terminated her presidency reflects their retaliatory intent. (*See* Pls.' Opp. 11.) According to Plaintiffs, Defendants "retain[ed] all elected officials of [Local 73] . . . as employees" with the exception of Brandon, who had engaged in misconduct, and Boardman. (*Id.*) Plaintiffs do not include this allegation in their complaint, nor do they state which elected officials (other than Barnett) received staff positions. Defendants do not deny the allegation, however. (*See* Defs.' Reply 12-13.) Instead, they contend that there were "legitimate, non-retaliatory reasons not to offer" a staff position to Boardman, "whose infighting [with Brandon] had contributed to the crisis at" Local 73. (*Id.* at 13.) This argument relies on the premise that Local 73 was in "crisis." Because Plaintiffs have adequately pleaded that they were maintaining democratic and financial order in Local 73, it does not assist Defendants. Assuming that Defendants gave staff positions to all Local 73 elected officers other than Boardman and Brandon—and considering Plaintiffs' allegation that Defendants fired Barnett from her staff position after she refused to report on Boardman's contacts with other members (*see* Second Am. Compl. ¶¶ 82-83)—the inference that Defendants imposed the trusteeship to retaliate against Plaintiffs becomes even stronger.

To summarize, Plaintiffs have adequately pleaded that Local 73 had not lost democratic order or financial stability at the time Defendants imposed the trusteeship. In addition, Plaintiffs' allegations provide a reasonable basis for the inference that Defendants imposed the trusteeship to retaliate against them for their speech. And Defendants have not identified any other permissible reason for imposing the trusteeship. Accordingly, Plaintiffs have adequately pleaded that Defendants' *only* reason for imposing the trusteeship was impermissible.

## B. Plaintiffs' LMRDA Title I, Section 101(a)(2) Claims

Title I of the LMRDA, 29 U.S.C. §§ 411-15, "provides union members with an exhaustive 'Bill of Rights' enforceable in federal court." *Crowley*, 467 U.S. at 536. "In particular, Title I is

designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline."  *Id.* at 536-37; *see also Vought*, 558 F.3d at 621.  Plaintiffs assert several claims under Title I's free speech provision, Section 101(a)(2), which provides, in relevant part, that every member of a labor organization "shall have the right to meet and assemble freely with other members" and "to express any views, arguments, or opinions."  29 U.S.C. § 411(a)(2).

### 1.    Imposition of the trusteeship and removal from elected positions (Boardman and Barnett)

Boardman alleges that Defendants placed Local 73 into trusteeship and terminated her elected position as the president in retaliation for publicly opposing Henry and SEIU and for filing charges against Brandon.  (*See* Second Am. Compl. ¶ 45.)  Similarly, Barnett alleges that Defendants placed Local 73 into trusteeship and terminated her elected position as the vice president in retaliation for "her support of Boardman in opposing" Henry and SEIU "on numerous issues."  (*Id.* ¶ 83.)  Defendants argue that Plaintiffs fail to state a claim under Section 101(a)(2) for these alleged injuries.  To the extent Plaintiffs are asserting claims under Section 101(a)(2) to challenge the actual imposition of the trusteeship, the court dismisses them, because independent challenges to a trusteeship are impermissible under Title I.  *See, e.g.*, *Farrell*, 888 F.2d at 461; *Morris*, 2001 WL 1231741, at *10.  The court, however, denies Defendants' motion to dismiss Plaintiffs' claims under Section 101(a)(2) for alleged retaliatory removal from their elected positions.

In *Finnegan*, the Supreme Court stated that in enacting Title I, Congress aimed to protect "rank-and-file union members," not "union officers or employees."  456 U.S. at 436-37.  The Court explained that "discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees."  *Id.* at 438.  Consistent with these principles, the Court held that Title I "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with

23

his own," or to discharge employees whose views are not. *Id.* at 441. Several years later, the Supreme Court drew a distinction between discharging elected, as opposed to appointed, union officers based on speech. *See Lynn*, 488 U.S. at 349 . The *Lynn* Court held that unlike the removal of an appointed officer or employee, "the removal of an elected [officer] in retaliation for" speech does violate Section 101(a)(2) of the LMRDA. *Id.* at 349-51. The Court explained that the speech-related consequences of removing an elected officer are more serious because the removal effectively denies union members "the representative of their choice." *Id.* at 355. "Furthermore, the potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged" because not only "the fired official," but also "the members who voted for him," are "likely to be chilled in the exercise of" their speech. *Id.*; *see also, e.g.*, *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 850-53 (N.D. Ill. 2008) (applying *Lynn*, denying motion to dismiss Section 101(a)(2) claims for removal from elected office based on speech); Pls.' Opp. 8 (citing same).

Defendants argue that because Plaintiffs have "fail[ed] adequately to allege that the trusteeship was unlawfully established," their claims for loss of union office "fail[] as a matter of law." (Defs.' Mot. 12; *see also id.* at 13 (citing, *inter alia*, *Keenan v. Int'l Ass'n of Machinists & Aerospace Workers*, 632 F. Supp. 2d 63, 72 (D. Me. 2009) ("Because Plaintiffs' removal from office resulted from imposition of" a trusteeship "that was procedurally and substantively lawful under Title III[,] this injury cannot ground a proper Title I claim.")); Defs.' Reply 9 (arguing that the trusteeship caused Plaintiffs to lose their elected positions automatically, and that "so long as the Trusteeship . . . was itself permissible," Plaintiffs' removal from office "was likewise permissible").) By the same token, Defendants concede that under *Lynn*, Plaintiffs can state a Section 101(a)(2) claim for the loss of their elected positions "if the trusteeship was imposed *solely* for an improper purpose." (Defs.' Reply 8.) As detailed above, Plaintiffs have adequately pleaded that Defendants imposed the trusteeship solely in retaliation for their speech. Thus, the court denies Defendants' motion to dismiss Plaintiffs' claims under Section 101(a)(2) for the loss of their elected

positions.  In doing so, the court reiterates that if Plaintiffs ultimately prevail on these claims, they cannot seek reinstatement to their elected positions or any other form of relief that would overturn the results of a completed election.  *See Hunter*, 2019 WL 1294697, at *9-11 (explaining that Title IV of the LMRDA precludes the court from granting such relief).  Plaintiffs' relief, should they prevail, will likely be limited to monetary damages.

### 2.    Loss of union membership

Plaintiffs also assert claims under Section 101(a)(2) for their loss of membership in Local 73.  (*See* Second Am. Compl. ¶¶ 50, 88.)  Defendants argue that Boardman had membership in Local 73 only because she was the elected president, and that Barnett had membership in Local 73 because she was the elected vice president and later a Local 73 staff employee.  (*See* Defs.' Mot. 5-6.)  In moving to dismiss Plaintiffs' Section 101(a)(2) claims for the loss of union membership, Defendants appear to make only one argument:  because Plaintiffs cannot state a claim for the loss of their elected positions, they likewise cannot state a claim for their loss of union membership, which depended on the elected positions.  (*See* Defs.' Mot. 12.)  But the court has concluded that Plaintiffs have stated a claim for the loss of their elected positions.  Thus, it denies Defendants' motion to dismiss Plaintiffs' Section 101(a)(2) claims for their loss of union membership.[13]

Defendants have cited *Brunt v. Service Employees International Union*, 284 F.3d 715 (7th Cir. 2002) in their discussion of Plaintiffs' Section 101(a)(5) claims.  As the court reads that decision, it supports the conclusion that Plaintiffs can proceed under Section 101(a)(2) for the alleged retaliatory loss of union membership.  In *Brunt*, the Seventh Circuit held that "[d]ischarge from union employment does not violate [the] LMRDA even if it has an indirect effect on union membership rights."  *Id.* at 720 (citing *Finnegan*, 456 U.S. at 440-41); *see also English*, 2019 WL

---

[13]    Because the court denies the motion to dismiss on this basis, it declines to address Boardman's argument that, at all relevant times, she was eligible for membership in Local 73 as a retiree.  (*See, e.g.*, Pls.' Opp. 2, 4.)

4735400, at *4 (same); Defs.' Mot. 5-6; Defs.' Notice of Supp. Authority [58] (discussing *English*). At issue in *Brunt* was a union president's decision to terminate the plaintiffs' union employment because the plaintiffs "fail[ed] to support [the president's] reelection." *Brunt*, 284 F.3d at 719. The terminations were lawful under *Finnegan*, the Seventh Circuit explained, because a union president "has a right to select his own employees." *Id.* (citing *Finnegan*, 456 U.S. at 441). The plaintiffs in *Brunt* lost their union membership as well—but only because "it was wholly contingent on their union employment." *Brunt*, 284 F.3d at 720. The Seventh Circuit determined that the defendants were not liable under the LMRDA for the plaintiffs' loss of union membership because it was an "incidental consequence[]" of their lawful discharge. *Id.*

*Brunt* suggests that if the termination of a union employee is *unlawful* and results in the employee's loss of "wholly contingent" union membership, she might have a viable claim under the LMRDA for the loss of union membership. *See id.* ("The district court properly held that [the union president] is not liable for any incidental consequences of his *legal* acts." (emphasis added).) Although *Brunt* addressed loss of union membership contingent on union *employment*, the court sees no reason why the principles set forth therein would not apply equally to loss of union membership contingent on elected office. Because Plaintiffs have adequately pleaded that Defendants terminated their elected positions in retaliation for speech, they have stated a claim under Section 101(a)(2) for the resulting loss of their union membership.

### 3. Retaliation relating to staff employment (Barnett)

Barnett alleges that Defendants violated Section 101(a)(2) by conditioning their offer of staff employment on her agreement to withdraw from the defamation lawsuit against Local 73. (*See* Second Am. Compl. ¶¶ 80, 83.) Defendants argue that Barnett fails to state a claim because she "alleges only that her *employment* status, and not her *membership* status, was conditioned on withdrawing from the suit"—and Title I does not protect an individual's employment status within a union. (Defs.' Mot. 13; *see, e.g.*, *Finnegan*, 456 U.S. at 436-37 ("It is readily apparent . . . that it was rank-and-file union members—not union officers or employees, as such—

26

whom Congress sought to protect" in Title I of the LMRDA); *Vought*, 558 F.3d at 621-22 (same).)[14]

Plaintiffs concede that Barnett was "not an elected official" when Defendants allegedly required her to withdraw from the defamation lawsuit and ultimately terminated her staff employment, but they argue that "[a] discharged, non-elected official fired as a pattern of intimidation and stifling dissent has an actionable claim." (Pls.' Opp. 8 (citing *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1158-59 (5th Cir. 1984); *Stroud v. Senese*, 832 F. Supp. 1206, 1213 (N.D. Ill. 1993).) Plaintiffs offer very little support for this argument. They merely state that Barnett's "allegations of intimidation, especially when taken together with [Boardman's] allegations, demonstrate the very type of pattern of intimidation anticipated by the *Stroud* and *Adams-Lundy* courts." (Pls.' Opp. 9.) Plaintiffs do not elaborate on the "pattern" that those courts "anticipated." Nor do they grapple with *Vought*, in which the Seventh Circuit—long after *Stroud* and *Adams-Lundy* were decided—all but shut the door on "the viability of appointed employment claims" under the LMRDA. *Vought*, 558 F.3d at 622-23 (LMRDA did not prohibit discharge of appointed staff employee despite that he was fired not by an elected union officer, but rather by an officer who gained his position by default when the incumbent was removed for cause); *see also Vazquez v. Cent. States Joint Bd.*, 692 F. Supp. 2d 968, 975-76 (N.D. Ill. 2010) (concluding that *Vought* forecloses LMRDA claims for loss of appointed employment, even when the discharge was allegedly part of a pattern to stifle dissent); Defs.' Reply 15 (citing *Vazquez* for same). In *Vought*, the Seventh Circuit did not directly address the pattern-of-stifling-dissent theory. *See Vought*, 558 F.3d at 621-23. And, if read liberally, *Vought* can be interpreted as preserving LMRDA claims for loss of appointed union jobs when the plaintiff can "convince[] [the

---

[14] As the court understands the Second Amended Complaint, Barnett also alleges that Defendants retaliated against her in violation of Section 101(a)(2) by terminating her staff employment after she refused to "to report to the trustees . . . on Boardman's contacts or alleged with union members." (Second Am. Compl. ¶ 83.) Neither side addresses this claim in their briefing. But this claim, too, concerns only Barnett's loss of staff employment. Accordingly, the court assumes that the parties intended for their briefing of the defamation-related allegations to cover both claims.

court] that the action taken was *anti*-democratic." *Id.* at 622. But it is Plaintiffs' job, not the court's, to make this argument. Plaintiffs do not do so. Their contention that Barnett's discharge was part of a pattern of stifling dissent is "perfunctory and undeveloped," and is therefore waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

Plaintiffs also allude to an argument that Barnett has a viable Section 101(a)(2) claim for the loss of her staff employment because trustees (Palmer and Medina), rather than elected officials, made the decision to discharge her. (*See* Pls.' Opp. 7 (arguing that "*Finnegan* is inapposite" because it is "limited to determining the power of an elected union official to replace patronage employees").) As just discussed, however, the Seventh Circuit rejected a similar argument in *Vought*. *See Vought*, 558 F.3d at 622-23 (termination of appointed union employee by union leader who was "not elected" to his position did not violate the LMRDA). One could argue that *Vought* is distinguishable because the unelected union leader in that case was not a trustee whose power derived from an allegedly unlawful trusteeship. Again, Plaintiffs do not make this point. Nor do they otherwise try to persuade the court that discharge from a staff position is actionable under the LMRDA when effectuated by an unelected official. Accordingly, this argument is waived as well. *See Crespo*, 824 F.3d at 674. For these reasons, the court grants Defendants' motion to dismiss Barnett's Section 101(a)(2) claim based on her loss of staff employment.

### 4. Exclusion from February 23, 2019 membership meeting (Boardman)

Boardman alleges that Defendants again violated Section 101(a)(2) when they prevented her from attending the February 23, 2019 membership meeting and had her arrested for trespassing while she was distributing leaflets that challenged Local 73's new leadership. (*See* Second Am. Compl., Count Seven.) Defendants contend the court lacks subject matter jurisdiction over this claim; they note that Title I guarantees certain rights only to *members* of labor organizations, and "Boardman has not alleged that she satisfies the requirement to be a retiree member of Local 73." (Defs.' Mot. 14 (citing, *inter alia*, *Brady v. Int'l Bhd. of Teamsters, Theatrical*

28

*Drivers & Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014) ("Because Title I regulates only the relationship between the union and its members, not other relationships, subject matter jurisdiction under the LMRDA exists only where the plaintiff is a member of the defendant union." (internal quotation marks omitted)); *Gavin v. Structural Iron Workers Local No. 1 of Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 553 F.2d 28, 30 (7th Cir. 1977) ("Non-members may not obtain relief under the [LMRDA].")).) For reasons already discussed, however, the court concludes that Boardman has stated a claim under Section 101(a)(2) for her loss of active union membership. Boardman could, thus, potentially demonstrate that she was an active member of Local 73 on February 23, 2019. Whether Boardman qualified as a retiree member at that time is beside the point. Defendant's motion to dismiss this claim is denied. The court notes, however, that if Boardman ultimately succeeds on her claim for exclusion from the February 2019 membership meeting, she will be limited to relief that would not interfere with the results of a completed election.

**C.       Plaintiffs' LMRDA Title I, Section 101(a)(5) Claims**

Section 101(a)(5) of Title I provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

Plaintiffs allege that Defendants violated Section 101(a)(5) when they terminated their positions as elected officers without due process. (*See* Second Am. Compl., Counts One and Four.) The court dismisses these claims—as well as Barnett's Section 101(a)(5) claim based on the termination of her staff employment—because Section 101(a)(5) addressed the rights of union members. It does not create a cause of action for improper discipline of union officers and employees. *See Finnegan*, 456 U.S. at 438 (Congress enacted Section 101(a)(5) "with the specific intent not to protect a member's status as a union employee or officer"); *see also id.*

29

(Section 101(a)(5)'s "prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer of the union" (quoting H.R. REP. NO. 1147, at 31 (1959)).)  The fact that Plaintiffs were elected rather than appointed to their positions does not alter this conclusion.  Although the Supreme Court in *Lynn* distinguished between removing elected versus appointed union officers, it did so only for purposes of Section 101(a)(2).  *See Lynn*, 488 U.S. at 354-55 (discussing the increased chilling effects on *speech* of removing an elected officer); *see also Vazquez*, 547 F. Supp. 2d at 855 (concluding that plaintiffs' claims under Section 101(a)(5) "based on their expulsion from union membership" were actionable, but dismissing Section 101(a)(5) claims with prejudice "to the extent [they] relate[d] to [p]laintiffs' termination as [elected] officers"); *Messina v. Local 1199 Serv. Emps. Int'l Union*, 205 F. Supp. 2d 111, 126 (S.D.N.Y. 2002) (stating that "*Lynn's* rationale for extending the free speech protections of the LMRDA to the retaliatory removal of an elected officer is less compelling in the context of the LMRDA's procedural protections" and dismissing Section 101(a)(5) claim for removal from elected position).  Plaintiffs argue that Boardman's Section 101(a)(5) claim for discharge from elected office is viable because Defendants allegedly filed no charges of wrongdoing against her.  But that allegation makes no difference under the case law just discussed, which Plaintiffs fail to address.

Plaintiffs also assert Section 101(a)(5) claims against Defendants for allegedly terminating their union *membership* without due process.  (*See* Second Am. Compl., Counts One and Four.)  As discussed above, the Seventh Circuit held in *Brunt* that where a union employee is *lawfully* discharged from union employment and loses her union membership as a result, she cannot state a claim under the LMRDA for the loss of union membership.  *See Brunt*, 284 F.3d at 719-20.  Because Plaintiffs have stated a claim under Section 101(a)(2) for retaliatory termination from their elected offices, *Brunt* suggests that a Section 101(a)(5) claim for the resulting loss of their union membership is viable.  The court, therefore, denies Defendants' motion to dismiss Plaintiffs' Section 101(a)(5) claims for their loss of membership in Local 73.

### D. Boardman's Retaliation Claim

In Count Eight of the Second Amended Complaint, Boardman alleges that Defendants forcibly removed her from the February 23, 2019 membership meeting and had her arrested for trespassing in retaliation for publicly opposing the SEIU and Local 73, and for filing this lawsuit. Boardman does not identify the law on which she bases this claim. Defendants suggest that the "closest fit" is 29 U.S.C. § 411(a)(4), which provides that "[n]o labor organization shall limit the right of any member thereof to institute an action in any court . . . ." (Defs.' Mot. 15.) Plaintiffs appear to concede that Boardman bases her retaliation claim on 29 U.S.C. § 411(a)(4), and that only a union member can seek relief under this provision. (*See* Pls.' Mot. 15.) Defendants argue that the court lacks subject matter jurisdiction over this claim because Boardman has not sufficiently pleaded that she was a member of Local 73, retiree or otherwise, during the time relevant to this claim. *See Brady*, 741 F.3d at 390. The court denies Defendants' motion to dismiss this claim for the reasons stated earlier: Boardman has adequately alleged claims under Sections 101(a)(2) and 101(a)(5) for her loss of union membership. Thus, as noted above, Boardman could theoretically demonstrate that she was a union member for purposes of her "retaliation" claim under 29 U.S.C. § 411(a)(4). Again, should she prevail on this claim, Boardman will not be able to seek relief that would overturn the results of a completed election.

### CONCLUSION

Defendants' Motion to Dismiss the Second Amended Complaint [45] is granted in part and denied in part. Specifically, the court denies Defendants' motion to dismiss Plaintiffs' Title III claims, but those claims are limited as set forth in this opinion. The court also denies Defendants' motion to dismiss: (1) Plaintiffs' claims under Section 101(a)(2) for loss of elected office and loss of union membership; (2) Boardman's claim under Section 101(a)(2) for exclusion from the February 23, 2019 membership meeting; (3) Plaintiffs' claims under Section 101(a)(5) for loss of union membership; and (4) Boardman's claim for "retaliation." The court grants Defendants' motion to dismiss: (1) Barnett's claim under Section 101(a)(2) for loss of staff employment; (2)

Plaintiffs' claims under Section 101(a)(5) for loss of elected office; and (3) Barnett's claim under Section 101(a)(5) for loss of staff employment.

ENTER:

Dated: February 28, 2020

_____
REBECCA R. PALLMEYER
United States District Judge